IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:21-CR-805 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| PHILLIP J. AUGUSTIN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Phillip J. Augustin (the "Defendant").  The Defendant is presently set for sentencing before the Court on May 6, 2022, for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 1349.  The offense stems from the Defendant originating and helping lead a scheme to submit fraudulent numerous Paycheck Protection Program ("PPP") loans, both for entities under his control and on behalf of other entities by offering and receiving kickbacks in return for the submission of  fraudulent PPP loans.

This memorandum sets forth the calculations  of the United States Sentencing Guidelines (the "Guidelines") as calculated by the United States Probation Office ("Probation") in the Presentence Investigation Report, disclosed April 19, 2022 [ECF No. 68] (the "PSR"), to which the government has no objection.  Furthermore, this memorandum describes the factors that will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  The government

submits that a Guidelines range sentence is appropriate in this matter.

## I.    FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized.  One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote, Wyleia Williams, Ross Charno, and others.  The Defendant sought fraudulent PPP loans for his own companies, Clear Vision Music Group ("Clear Vision") and Top Gun Consulting and Management LLC ("Top Gun"), with Stote providing falsified documents and assisting the Defendant in submitting the application on the Defendant's behalf.  Augustin also solicited and recruited confederate borrowers, for whom he and his co-conspirators submitted fraudulent PPP loans in exchange for a kickback from the loan proceeds.  To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

### A.    The CARES Act

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP.  The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities.   In April 2020, Congress authorized an additional $310 billion for PPP funding.  These funds were designed to address the unprecedented crisis facing Americans— especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need.  To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses.  The supporting documentation requirement was minimal and could be satisfied with one years' worth of the company's tax records.  If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.      Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Information [ECF No. 35], the Defendant's plea agreement [ECF No. 58], and the PSR [ECF No. 68].

Beginning in May 2020 through in or around at least July 2020, the Defendant conspired with Stote, Williams, Charno and others to submit fraudulent PPP loan applications for entities under his control, Clear Vision and Top Gun.  Augustin, Stote, Charno and other co-conspirators also solicited and recruited confederate borrowers, for whom they submitted fraudulent PPP loan applications.  This includes fraudulent applications on behalf of Deon Levy, a resident of Ohio, and his two Ohio companies, Apex Now Corp. ("Apex Now") and Urban Housing Group LLC ("Urban Housing").  Augustin, Stote, and Charno arranged for the confederate borrowers to pay 25% of the amount of the PPP loan as a kickback for obtaining the loan, to be wired to accounts controlled by Stote.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Clear Vision that the Defendant knew contained materially false and fraudulent representations.  The application included a counterfeit February 2020 bank statement

3

for Clear Vision, and counterfeit IRS Forms 941, signed by Augustin, for each quarter of 2019 showing payroll for 10 employees yielding the application's "Average Monthly Payroll" figure of $33,806, which determined the $84,515 amount of the loan.

Beginning on May 14, 2020, and continuing in June 2020, Augustin contacted numerous confederate borrowers to solicit their interest in submitting fraudulent PPP applications through Stote in exchange for paying 25% of the loan amount as a fee.

Between May 19, 2020 and June 22, 2020, Augustin received at least $900,789.35 in wire transfers from Stote as part of Augustin's share of the proceeds from the fees that confederates had paid Stote.  At Augustin's instruction, Stote sent the money to bank accounts in the name of "60 Day Funding and Investment Group LLC."  Augustin had recently established that entity and opened accounts in its name, and used that entity and those accounts to receive the proceeds of the scheme.

On June 14, 2020, Augustin directed Stote to submit a fraudulent PPP application for Top Gun for $449,500.  That application also included falsified IRS Forms 941 with inflated payroll and a falsified bank statement.

On or about July 6, 2020, after learning of Stote's arrest, Augustin gave a voluntary interview to investigators. In an effort to obstruct the investigation into his and his associates' criminal actions, Augustin falsely portrayed himself as a passive recipient of referral fees based only on referrals he had made before the COVID-19 pandemic and the PPP program.  Augustin misled investigators about the extent of his and his associates' knowledge of, and involvement in, the misstatements contained in the PPP loan applications. In fact, Augustin was s in regular contact with Stote about referrals and documents to be used specifically in PPP loan applications, which Augustin knew were fraudulent.  And on July 9, 2020, Augustin caused documentation of his prior

4

referrals to be provided to investigators in an attempt to support his misrepresentations in his interview and further mislead investigators.

As a result of Defendant's conduct, and the conduct of Defendant's coconspirators that was within the scope and in furtherance of the conspiracy, and reasonably foreseeable to Defendant in connection the conspiracy, application materials for at least 34 PPP loans worth at least $15,342,563 were submitted, with additional applications planned to be submitted.

## II.  PROCEDURAL HISTORY

On July 28, 2020, the Defendant was charged in a Complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, bank fraud, in violation of Title 18, United States Code, Section 1344, and obstruction of justice, in violation of Title 18, United States Code, Sections 1503 and 1512(c)(2). On November 10, 2021, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 [ECF No. 35].  The Defendant pleaded guilty to the Information pursuant to a written plea agreement on December 14, 2021 before the Honorable Amanda Knapp [ECF No. 48], and this Court adopted the Report and Recommendation of Magistrate Judge Knapp on January 2, 2022 [ECF No. 57].  Sentencing is presently scheduled for May 6, 2022.

## III.     SENTENCING GUIDELINES CALCULATIONS

As explained below, the United States submits that the Defendant's Total Offense Level is 32. As set forth in the PSR, Probation computes the Total Offense Level at 32 (PSR ¶¶ 48-59). The United States concurs with the Offense Level computation in the PSR, which is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 7 |
| Loss greater than $9,500,000 but less than $25,000,000, § 2B1.1(b)(1)(K) | 20 |
| Sophisticated means, § 2B1.1(b)(10)(C) | 2 |
| Leader/organizer, § 3B1.1(a) | 4 |
| Obstruction of justice, § 3C1.1 | 2 |
| **Offense Level Before Acceptance of Responsibility** | **35** |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | -3 |
| **Total Offense Level** | **32** |

The Defendant does not object to the calculation of the Guidelines.

## IV.     CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the imposition of a Guidelines range sentence.

### A.     Nature and Circumstances of the Office

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting false applications claiming to have employees and payroll

6

that did not exist.  His applications were supported by false tax forms and fictitious bank statements.  The Defendant's greed did not stop there, as he recruited numerous other borrowers to the scheme in exchange for kickback payments from their fraudulent loan proceeds.  The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range.

### B.    History and Characteristics of the Defendant

The Defendant is a 53-year-old man who was an owner and manager of Clear Vision and Top Gun, both of which had limited operations prior to the COVID-19 pandemic. [ECF No. 68 at ¶ 13].  The Defendant has one criminal history point.  (*Id.* at ¶ 66).  The Defendant was convicted of simple assault in 2011 and theft by deception in 2005 related to filing a false insurance claim. (*Id.* at ¶ 64).

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for grand jury and a trial, as reflected in the 3-level downward adjustment for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

### C.    Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should address a need for both general and specific deterrence. The Sixth Circuit has recognized that, because "economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).  Indeed, ensuring adequate punishment for, and deterrence of, white collar economic crime was one of the central

motivators behind the creation of the Guidelines. *See United States v.* Musgrave, 761 F.3d 602, 609 (6th Cir. 2014) (collecting citations).

This case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic.  As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance.  A significant sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence.  Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Individuals like the Defendant, who seek to defraud these programs, not only drain the program of limited funding, but they also make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it.  The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence within the Guidelines range is sufficient to protect the public from future crimes of this Defendant, who has one criminal history point.  With this sentence, the government believes the risk of recidivism is low.

**D.  Need for the Sentence to Avoid Unwarranted Sentencing Disparities**

A Guidelines range sentence will not create an unwarranted sentencing disparity.  There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case.  Judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment for offenses related to PPP fraud.  *See, e.g.*, *United States v. Lawrence Lawson, et al.*, Case No. 1:21CR598 (N.D. Ohio, March 2022) (Gwin, J.) (imposing Guidelines range prison

sentences for all conspiracy members[1] except one who had recently had a baby); *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

As detailed below, 19 other conspirators in this scheme have been sentenced, 10 of whom have been sentenced to terms of imprisonment within the applicable Guidelines range.

On February 3, 2022, the court sentenced Keyaira Bostic to 44 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Bostic*, Case No. 20-CR-60139 (S.D. Fla.).  On January 21, 2022, the court sentenced her co-defendant, Damion McKenzie, to 44 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  [*Id.* at ECF No. 133].  The Court granted a slight downward variance from the Guidelines range of 46-57 months for these two defendants given

---

[1]      Details of these sentences in Case No. 1:21CR598  are as follows:

| Defendant | Range | Sentence | Sent. Date |
|---|---|---|---|
| Lawrence Lawson | 41-51 months | 51 months | 3/15/2022 |
| Terrance Jones | 24-30 months | 26 months | 3/7/2022 |
| Quantez Lawson | 12-18 months | 1 year and 1 day | 3/24/2022 |
| Emanuel Smith | 15-21 months | 17 months | 3/7/2022 |
| Charles Moore | 8-14 months | 8 months | 3/15/2022 |
| Mark Dailey | 0-6 months | 2 months | 3/9/2022 |

their role compared to the loss amount.  On February 22, 2022, the court sentenced Shanrika Duhart to 15 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture.  *United States v. Duhart*, Case No. 20-CR-60254 (S.D. Fla.) (granting downward variance from 18-24 months Guidelines sentence on a loss amount of $388,790 and citing the defendant's status as a single mom of four children).

On February 14, 2022, the court sentenced co-conspirators David Redfern, Joseph Cartlidge, and Eric McMiller to 60, 72, and 66 months imprisonment, respectively, and also ordered three years of supervised released, and ordered the defendants to pay restitution and forfeiture.  *United States v. Redfern, et al*., Case No. 20-CR-00340 (M.D.N.C.).  The intended loss for all three defendants was $2,778,474.85.  The court applied the sophisticated means enhancement and the two-level enhancement under § 2B1.1(b)(12) to all three defendants, which for Redfern and McMiller, resulted in a sentence that was above the guidelines initially calculated on their PSRs.  Cartlidge's sentence was within the guidelines applied by the court.

On February 1, 2022, the court sentenced co-conspirator Luke Pierre to 24 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Pierre*, Case No. 21-CR-60288-WPD (S.D. Fla.).  On December 10, 2021, the court sentenced co-conspirator Joshua Bellamy to 37 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Bellamy*, Case No. 21-CR-60064-RKA (S.D. Fla.).  On December 9, 2021, the court sentenced co-conspirator Yashica Bain to 24 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Bain*, Case No. 21-CR-60200-DMM (S.D. Fla.).  On December 3, 2021, the court sentenced co-conspirator Jericca Rosado to 37 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture.

*United States v. Rosado*, Case No. 21-CR-60211-JEM (S.D. Fla.).  Each of these sentences was at the bottom of the applicable Guidelines range.

On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Thames*, Case No. 21-CR-60125-RKA (S.D. Fla.).  The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced Thames' sentence by approximately 33%.  Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Garcia*, Case No. 21-CR-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-CR-60159-RAR (S.D. Fla.).  On July 27, 2021, co-conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and was ordered to pay restitution and forfeiture.  *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.).  On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture.  *United States v. Arnold*, No. 21-CR-20331-BB (S.D. Fla.).  On December 14, 2021, Diamond Smith was sentenced to 20 months imprisonment and three years of supervised release, and was ordered to pay restitution and forfeiture.  *United States v. Smith*, Case No. 21-CR-20001 (S.D. Fla.).  Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could pay any kickbacks or otherwise spend the

funds.  On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture.  *United States v. Denton*, No. 21-CR-60171 (S.D. Fla.).  Defendants Walker, Johnson, Arnold, and Denton had no criminal history points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[2]  In addition, on April 29, 2022, Defendant Gary A. Venning received a below-Guidelines sentence of 3 years of probation, with a special condition of the first year being on home confinement, as well restitution.[3]  *United States v. Venning*, No. 22-CR-60001 (S.D. Fla.).

On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.  *United States v. Clark*, Case No. 21-CR-60029-WPD (S.D. Fla.).  Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history.  Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the Court, after the court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[4]

---

[2] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[3]   While the Court termed the sentence "supervised release," the government understands the sentence imposed to be probation because the defendant did not receive any prison sentence, after which he could be released.

[4] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000.  However, Clark ultimately received little money from the scheme, which the Court found to be a significant factor at sentencing.

The intended loss amount of $15,342,563 from 34 fraudulent loans attributable to the Defendant's jointly undertaken criminal activity is an important measure of his relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $35 million in intended losses.  That is, Stote, who led and organized the scheme in this case and was involved in preparing or submitting every fraudulent loan application, will be responsible for a greater intended loss amount and a correspondingly higher advisory Guidelines range under Section 2B1.1 as compared to other conspirators who were involved in fewer fraudulent loans.  A sentence that accounts for the loss associated with this Defendant, who is being held responsible only for the loss associated with his fraudulent loan and those reasonably foreseeable to him as a referral source, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

## V.     RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1).  As set forth in the Plea Agreement [ECF No. 58 ¶ 57], the United States and the Defendant have agreed that the Defendant owes restitution.   The United States is seeking restitution in the amount of $5,862,134.74, comprising $2,461,484.00 owed to Bank 2 and $3,400,650.74 owed to the Small Business Association (details are being provided under separate cover to Probation).  Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases:  *United States v. Stote*, 21-CR-00805-PAB (N.D. Ohio); *United States v. Bostic*, Case No. 20-cr-60139 (S.D. Fla.); *United States v. Smith*, Case No. 21-CR-20001 (S.D. Fla.). *United States v. McKenzie*, Case No. 20-cr-60139 (S.D. Fla.); *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.); *United States v. Bellamy*, Case No. 21-CR-60064-RKA (S.D. Fla.); *United States v. Thames*, Case No. 21-CR-60125-RKA (S.D. Fla.); *United States v. Johnson*, Case

13

No. 21-CR-60017-RKA (S.D. Fla.); *United States v. Arnold*, No. 21-CR-20331-BB (S.D. Fla.);

*United States v. Clark*, Case No. 21-CR-60029-WPD (S.D. Fla.); *United States v. Pierre*, Case No.

21-cr-60288-WPD (S.D. Fla.);

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to forfeit certain

property. [ECF No. 58 ¶ 15.]  On March 11, 2022, the Court entered a final order of forfeiture in

which the Court ordered those properties forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c). [ECF No. 62.]

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court find

that the applicable Total Offense Level under the Guidelines is 32.  The government submits that

a Guidelines range sentence is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

The United States also requests that the Court order restitution, forfeiture, and a special assessment,

consistent with the Plea Agreement [ECF No. 58] and the authorities discussed herein.

Respectfully Submitted,

MICHELLE M. BAEPPLER
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION

By:   /s/ *Elliot Morrison*
      ELLIOT MORRISON (OH: 0091740)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3919
      Elliot.Morrison@usdoj.gov

By:   /s/ *Philip B. Trout*
      PHILIP B. TROUT (VA: 79152)
      Trial Attorney, Fraud Section
      U.S. Department of Justice
      1400 New York Ave NW
      Washington, DC 20530
      Tel: (202) 616-6989
      Fax: (202) 514-3708
      Email: philip.trout@usdoj.gov

15